# 22-1237-cv

## United States Court of Appeals

*for the*

## Second Circuit

KRISTEN KING,

*Plaintiff-Appellant,*

– v. –

ARAMARK SERVICES INC.,

*Defendant-Appellee.*

---

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK

## REPLY BRIEF FOR PLAINTIFF-APPELLANT

JOSEPHINE A. GRECO, ESQ.
GRECO TRAPP, PLLC
*Attorneys for Plaintiff-Appellant*
14 Lafayette Square
Suite 1700
Buffalo, New York 14203
(716) 856-5800

**TABLE OF CONTENTS**


TABLE OF AUTHORITIES ..... ii

RESPONSE TO ARAMARK'S STATEMENT OF THE CASE ..... 1

ARGUMENT ..... 4

POINT I: THE COURT ERRED IN GRANTING SUMMARY JUDGMENT DISMISSING KING'S CLAIMS OF SEX DISCRIMINATION, SEXUAL HOSTILE WORK ENVRONMENT AND RETALIATION UNDER TITLE VII ..... 4

A. A Reasonable Jury Could Find Direct Evidence Of Sex Discrimination ..... 4

B. A Reasonable Jury Could Find The Facts Give Rise To An Inference Of Sex Discrimination ..... 6

C. A Reasonable Jury Could Find Aramark's Purported Reasons For King's Termination Were A Pretext For Sex Discrimination And Retaliation ..... 10

D. A Reasonable Jury Could Find King's Timely Claims Of HWE Were Actionable And Part Of A Continuing Violation Of Discrimination ..... 11

POINT II: THE COURT ERRED IN DISMISSING KING'S NYSHRL CLAIMS ..... 14

CONCLUSION ..... 18

# TABLE OF AUTHORITIES

## Cases

*Back v. Hastings On Hudson Union Free Sch. Dist.*,
365 F.3d 107 (2d Cir. 2004) ....................................................................13

*Bass v. World Wrestling Fed'n Entm't, Inc.*,
129 F. Supp. 2d 491 (E.D.N.Y. 2001) .......................................................17

*Curto v. Med. World Commc'ns, Inc.*,
388 F. Supp. 2d 101 (E.D.N.Y. 2005) .......................................................15

*Garcia v. Yonkers Bd. of Educ.*,
188 F. Supp. 3d 353 (S.D.N.Y. 2016) .......................................................14

*Gorzynski v. JetBlue Airways Corp.*,
596 F.3d 93 (2d Cir. 2010) ........................................................................8

*Graham v. Long Island R.R.*,
230 F.3d 34 (2d Cir. 2000) ........................................................................8

*Hargett v. Nat'l Westminster Bank*,
78 F.3d 836 (2d Cir. 1996) ........................................................................8

*Int'l Healthcare Exch., Inc. v. Global Healthcare Exch., LLC*,
470 F. Supp. 2d 345 (S.D.N.Y. 2007) .......................................................15

*Sassaman v. Gamache*,
566 F.3d 307 (2d Cir. 2009) ......................................................................7

*Taperell v. Tegan Lighting, Inc.*,
18-CV-3343 (SJF)(ARL), 2019 WL 1118053 (E.D.N.Y. 2019) .................15

**RESPONSE TO ARAMARK'S STATEMENT OF THE CASE**

Aramark relies upon a number of factual assertions in Appellee's Brief which are not supported by the record citation or are without reference to any record citation and should be disregarded. For example, in Appellee's Brief at 3, a full page entitled "I. Factual Background" fails to be supported by any reference to the record.

Aramark also ignores that King complained not only about District Manager Griffith Thomas ("Thomas"), but also about Aramark's management employees and Human Resources ("HR") representatives failing to act regarding her many complaints and retaliating against her for her complaints. A-989-91, 995, 1000-01, 1013-14, 1020-22, 1030, 1059, 1062-63, 1095, 1098-1101, 1112-13, 1117-18, 1124, 1134-35, 1451-59, 1777-80. In Appellee's Brief at 11-12, 17-18, Aramark admits that any complaint to the Hotline only resulted in Aramark's HR representatives doing an investigation, as the third-party administrator simply relays Hotline calls to Aramark's HR Department. Thus, King's complaints regarding Thomas as well as those complaints regarding Aramark's managers and HR representatives (i.e., Rebecca Adams ("Adams"), Kelly Barrett ("Barrett"), Colleen O'Donnell ("O'Donnell"), Evelyn Miller) failing to take action to stop the discrimination, harassment, and retaliation merely resulted in Aramark's HR

Department investigating itself, which King contends resulted in a policy or practice of tolerating discrimination in the workplace. *See* Appellant Br. at 54.

Moreover, Aramark's assertion in Appellee's Brief at 8 that King engaged in disruptive behavior when issued the First Written Warning on August 29, 2016 is untrue and refuted by King. *See* King Decl. ¶48 (A-1101-02); CSF ¶62 (A-1000-01).

In addition, as demonstrated at King Decl. ¶¶ 8-11 (A-1082-84), 30-32 (A-1093-94), 75 (A-1117-18), 96 (A-1130) and CSF ¶¶ 18 (A-972), 40 (A-991), 105 (A-1038), Aramark's attempt to cast King as having a history of being inappropriately reimbursed for travel expenses and paid relocation fees is inaccurate. *See* Appellee Br. at 3, 5.

Furthermore, in Appellee's Brief at 15, Aramark attempts to conflate King's testimony relative to what occurred on August 30, 2017 and August 31, 2017 by stating that King had Brittany Cubbage ("Cubbage") drive her to work on August 30, 2017 to attend a Directors Meeting "and work with her on the documents there." King's testimony is clear she had planned and scheduled to meet with the Valley Health System ("VHS") Food Directors at a Food Directors Meeting at Winchester Medical Center ("WMC") on August 30, 2017, which Thomas was also attending. A-1131. After scheduling such meeting, Thomas directed King to

be at WMC on August 31, 2017 for the upcoming VHS proposal meeting which King was not scheduled to attend. A-674, 678, 1130. King had planned to work with Cubbage at Page Memorial Hospital ("Page") on the Meals on Wheels ("MOW") and Prima on August 31, 2017. A-1131. When King's car had mechanical problems and Thomas would not grant King PTO, King told Cubbage they would work together on these matters on August 31, 2017 at WMC instead of Page. A-678-679, 689, 1130.

Finally, Aramark's contention that Cubbage dropped King off at WMC on August 31, 2017 (*see* Appellee Br. at 14) is refuted by Cubbage's own lack of recollection and the testimony of King, Thomas, and Barrett. A-1041-42. Further, Aramark's statement that King was told that the investigation involved August 31, 2017 (citing A-676) is inaccurate. King was told she was under investigation for her decision to authorize travel reimbursement for Cubbage, but not told the specific date, nor given any documents or opportunity to explain the details of what occurred. A-1132-33. King had properly authorized Cubbage to travel to WMC for business reasons on both August 30, 2017 and August 31, 2017, and would have explained if permitted to do so. A-1131-33.

# ARGUMENT

## POINT I

## THE COURT ERRED IN GRANTING SUMMARY JUDGMENT DISMISSING KING'S CLAIMS OF SEX DISCRIMINATION, SEXUAL HOSTILE WORK ENVRONMENT AND RETALIATION UNDER TITLE VII

### A. A Reasonable Jury Could Find Direct Evidence Of Sex Discrimination

Challenging King's direct evidence of gender discrimination based on Thomas' comments and conduct regarding King's physical appearance, Aramark, like the District Court ("the Court"), ignores the context in which Thomas' comments and conduct occurred. *See* Appellee Br. at 29-30. As King demonstrated in Appellant's Brief at 22-27, a reasonable jury could find that Thomas' comments together with his frequent staring at King's belly and jokes about women reflect his discriminatory attitude.

Aramark's claim that King has no personal knowledge that Thomas did not make weight-related comments to men is unsupported in the record. *See* Appellee Br. at 29. In doing so Aramark conveniently ignores that Aramark, not King, made factually unsupported statements, namely, that King was not present for most interactions between Thomas and Jacob Williford ("Williford") and only had approximately 15 interactions with Christopher Harriman ("Harriman") and Thomas DeGori ("DeGori"), which were erroneously relied on by the Court. *See*

Appellant Br. at 25-27. Additionally, Aramark does not refute that, despite representing and questioning Thomas, Williford, Harriman, and DeGori at the depositions in this case, Aramark's counsel did not (1) ask them if Thomas made such comments to them, (2) address it in Thomas' Declaration, nor (3) submit a Declaration of Williford, Harriman or DeGori, although they could have done so to refute King's testimony.

As set forth in Appellant's Brief at 27, the evidence belies Aramark's misguided contention and the Court's determination that Thomas made a single joke about women. *See* Appellee Br. at 30; SPA-79 n.4. Contrary to what Aramark argues, King did not change her sworn deposition testimony. King's deposition testimony is clear that "[Thomas] told jokes about women." A-652. Although at the time of being deposed King could only recall one specific joke, which was in the presence of vice presidents, she was clear that she believed Thomas "[t]elling women based jokes" constituted sexual harassment. A-656. The evidence taken in the light most favorable to King shows that Thomas told jokes about women, not merely a single stray remark.

As King demonstrated above and in Appellant's Brief at 22-27, a question of fact exists for a jury as to whether Thomas' comments together with his frequent staring at King's belly and jokes about women demonstrate a discriminatory attitude.

### B. A Reasonable Jury Could Find The Facts Give Rise To An Inference Of Sex Discrimination

In addition to Thomas' comments and conduct, as set forth in Point I(A) *supra*, creating an inference of sex discrimination, Thomas also spoke to King in a rude and condescending tone and used her performance as a negative example during meetings and on calls, which he did not do to any male manager. *See* Appellant Br. at 28-29. Notably, Aramark failed to address this evidence let alone consider whether it, in combination with the other evidence, creates an inference of sex discrimination.

Aramark claims that its investigation into King's alleged Business Conduct Policy ("BCP") violation was not a sham because Barrett, not Thomas, appropriately conducted a full investigation consistent with Barrett's training. *See* Appellee Br. at 30-31. As set forth in Appellant's Brief at 29-33, Barrett neither followed her own investigation process nor independently conducted the investigation. Furthermore, it is not only uncontested that Barrett never spoke with Williford, only Thomas did, but also that Thomas and Barrett together told King of the investigation and spoke with Cubbage. *See* Appellant Br. at 31-33. Aramark cannot reasonably dispute that Thomas actively participated in the investigation. Moreover, Aramark fails to recognize that where the plaintiff can point to evidence tied to the adverse employment action that could be interpreted as indicating that

discrimination drove the decision, an insufficient investigation can support an inference of discriminatory intent. *Sassaman v. Gamache*, 566 F.3d 307, 314-15 (2d Cir. 2009). In light of the evidence showing Thomas' discriminatory, harassing, and retaliatory treatment of King (of which Barrett was aware), in conjunction with his involvement in the investigation of King, it is a question for the jury as to whether Barrett's departure from procedural regularity gives rise to an inference of discrimination. *See* Appellant Br. at 32-33.

Further, Aramark's position that King and the male managers reporting to Thomas are not similarly situated is spurious. In July 2017 when Thomas attempted to terminate King because she missed targets in financial and employee engagement, etc. (i.e., VOC retail surveys, Top 15, Hourly Turnover), Aramark's own Director of Employee Relations, O'Donnell, pointed out to Thomas that "[a]n important factor in determining appropriate next steps is looking at how are these scores as compared to each of [King's] peers? We need to look not only at [King's] scores but how she stacks up to peers." A-1741-42. King's peers are DeGori, Harriman, John Wilson, and Christopher Drayton, the highest-level operations managers at their locations who directly reported to Thomas. *See* Appellant Br. at 33-34. Thomas treated them as equal positions regardless of their client size and location. *Id*. As demonstrated in Appellant's Brief at 33-46, King's evidence established that all of Thomas' direct reports shared the same duties, were subject

to the same workplace rules and standards, and engaged in conduct of comparable seriousness. To be similarly situated, comparators need only to have engaged in conduct of a comparable seriousness, not identical conduct. *See Graham v. Long Island R.R.*, 230 F.3d 34, 40 (2d Cir. 2000). Furthermore, the treatment of males is relevant evidence of Thomas' attitude about gender. *See Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 109 n.7 (2d Cir. 2010). From the evidence of disparate treatment proffered by King, in combination with the other evidence, a reasonable jury could find that Thomas demonstrated a discriminatory animus.

Aramark incorrectly argues that because Thomas was King's manager he is precluded as a comparator. *See* Appellee Br. at 32. Like this Court found in *Gorzynski*, employees need not be of the exact same rank to be similarly situated so long as they are subject to the same workplace rules and policies. *See Gorzynski*, 596 F.3d at 109 n.7 (citing *Hargett v. Nat'l Westminster Bank*, 78 F.3d 836, 839 (2d Cir. 1996)). As set forth in Appellant's Brief at 34-36, both King and Thomas were subject to the BCP and similarly situated as to its application. Thomas directed King to fraudulently falsify performance documents relative to Heather Rizzo ("Rizzo"), a high performing EVS manager who reported to King. Rizzo told King that Thomas had directed Rizzo to fraudulently change numbers on a report to make the results look more positive in violation of the BCP. A-998, 1037, 1517. Rizzo refused to do so and reported it to the Hotline, who took no

action. A-1068, 1111, 1129-30. A reasonable jury could conclude that Thomas directing King and Rizzo to falsify performance and financial documents, respectively, is of comparable seriousness with King's alleged misconduct of submitting a $56.68 travel expense, yet no action was taken against Thomas.

Likewise, as fully explained in Appellant's Brief at 34-35, despite it being unrefuted that "Food safety is absolutely critical" at Aramark, Thomas knowingly permitted Harriman to have "[o]ngoing, numerous and frequent Food Safety Issues" for over a year in violation of the plain words of the BCP, which mandates that all employees comply with all health and safety laws and protect human health and safety. A-1374, 1512, 1650. Contrary to the Court's finding and Aramark's stance, a reasonable jury could conclude that ongoing, numerous, and frequent food safety issues for over a year in a hospital setting are of a comparable seriousness with King's alleged misconduct.

Finally, Aramark has not refuted King's argument regarding the Court's erroneous weakening of King's prima facie case in multiple ways. *See* Appellant Br. at 46-48.

As Point I(C) of Appellant's Brief and the foregoing demonstrate, the Court erred in finding that there was no inference of sex discrimination.

### C. A REASONABLE JURY COULD FIND ARAMARK'S PURPORTED REASONS FOR KING'S TERMINATION WERE A PRETEXT FOR SEX DISCRIMINATION AND RETALIATION

King demonstrated in Appellant's Brief at 49-52 that Aramark's purported reasons for King's termination were a pretext for sex discrimination and retaliation, and responded to the arguments set forth in Appellee's Brief at 32-34, which otherwise raises no new arguments.

It is, however, noteworthy that Aramark's argument that a valid reason for King's termination was her failure to bring documents to her September 18, 2017 Performance Improvement Plan ("PIP") meeting ignores that Thomas' conduct prevented it. Aramark failed to refute that Thomas changed the meeting's location at 8:34 p.m. on Sunday, September 17, 2017 when King was off the computer. *See* Appellant Br. at 51; A-1173, 1786. Thomas knew that King did not learn until Monday, September 18, 2017 at 6:21 a.m. that Thomas changed the meeting location from WMC to 9 a.m. at Warren Memorial Hospital, causing King to advise Thomas she would be unable to bring the documents she had gathered at WMC where the meeting was previously scheduled to be held. *Id*. Additionally, when King arrived at the meeting Thomas immediately called Barrett who informed King she was under investigation for a BCP violation. There was no discussion regarding King's PIP at this meeting, as King "was crying and upset . . . and [Thomas] just kind of shut his briefcase and walked out." *See* Appellant Br. at

51; A-676-77. A jury may find that Aramark's termination of King because she failed to produce documents at her September 18, 2017 PIP meeting held without reasonable notice and no PIP discussion is another false reason for King's termination.

It is also notable that Aramark does not dispute that King's alleged continued performance issues were in the context of Thomas disparately disciplining King, actively impeding her performance, attempting to terminate her using false data and no comparison to the data of male managers, continually failing to provide King with a PIP, and finally placing her on a bogus PIP. *See* Appellant Br. at 52.

For the reasons stated in Point I(D) of Appellant's Brief and the foregoing, a reasonable jury could conclude that Aramark's stated reasons for King's termination are false and that the real reason is further discrimination and retaliation.

### D. A Reasonable Jury Could Find King's Timely Claims Of HWE Were Actionable And Part Of A Continuing Violation Of Discrimination

Aramark contends the Court correctly held that the three acts inside the statutory period cannot be part of the same hostile work environment. *See* Appellee Br. at 26-28. As set forth in Appellant's Brief at 52-58, Aramark's inaction in the

face of King's complaints is tantamount to a policy or practice of tolerating discrimination, and Thomas took advantage of that policy or practice by engaging in a continued course of conduct intended to get rid of King, which culminated in her termination.

Regarding Aramark's failure to investigate King's September 19, 2017 Hotline complaint (*see* Appellant Br. at 55-56), Aramark unsuccessfully attempts to cast Thomas' involvement in this investigation as an interviewee. *See* Appellee Br. at 27. Thomas is not listed as having been interviewed, yet his involvement in the investigation is evident throughout the Hotline Report. A-1799-1801. Contrary to Aramark's contention and the Court's finding, a reasonable jury could conclude that Thomas, the instigator of and a decisionmaker in King's termination, played a meaningful role in the Hotline investigation and how it was conducted, in furtherance of his continued campaign to get rid of King and Aramark's continued policy or practice of ignoring or downplaying King's numerous complaints and tolerating discrimination.

Converse to Aramark's contention (*see* Appellee Br. at 27-28) and the Court's determination (SPA-76), the fact that King was not sent Thomas' September 20, 2017 email about notifying the client of King's termination for a BCP violation is of no moment. *See* Appellant Br. at 56-57. Taking the evidence in the light most favorable to King, a reasonable jury could find that this email was

another way for Thomas to demean King and make her performance look deficient, and part of the continuing course of discriminatory conduct underlying the hostile work environment claim caused by Aramark's continued policy or practice of ignoring or downplaying King's numerous prior complaints and tolerating discrimination.

Aramark unsoundly argues that King's September 21, 2017 termination was a discrete act made by two women. *See* Appellee Br. at 28. Thomas admitted he was involved in the decision to terminate King (A-1236), and Barrett admitted the decision to terminate King was made by Barrett, O'Donnell, and Thomas. A-1418. The impermissible bias of a single individual who played a meaningful role in the process may taint the ultimate outcome. *See Back v. Hastings On Hudson Union Free Sch. Dist.*, 365 F.3d 107, 125-26 (2d Cir. 2004). Thus, Aramark's assertion that the termination decision was made by two women is disingenuous and ignores relevant evidence. *See* Appellant Br. at 46-47. Moreover, even if that decision was based on Barrett's investigation of King's alleged BCP violation, as argued by Aramark, the evidence presented by King shows that Thomas instigated and was involved in that investigation, which was a sham. *See* Appellant Br. at 29-33.

Further, Aramark ignores that its policy or practice of tolerating discrimination due to inaction in the face of King's repeated complaints was taken advantage of by Thomas by continuing his campaign to get rid of King, the final

act of which was her termination. *See* Appellant Br. at 57-58. Thus, Aramark's reliance on *Garcia v. Yonkers Bd. of Educ.* is misplaced, as the plaintiff there did not claim that her termination was in furtherance of a policy or practice of discrimination. *See* 188 F. Supp. 3d 353, 356-57 (S.D.N.Y. 2016).

For the reasons set forth in Point I(E) of Appellant's Brief and herein, this matter should be remanded to the Court for further proceedings to address the merits of King's hostile work environment claims.

## POINT II

## THE COURT ERRED IN DISMISSING KING'S NYSHRL CLAIMS

Aramark argues that the Court properly dismissed King's New York State Human Rights Law ("NYSHRL") claims because the alleged discrimination did not originate in New York ("NY") or affect King's NY employment. *See* Appellee Br. at 24-26. In doing so, Aramark misconstrues the law, misstates facts, and construes the allegations of King's Complaint and inferences therefrom in the light most favorable to Aramark.

For the reasons set forth in Appellant's Brief at 58-65, Aramark's argument and the Court's holding that King must have been "employed in NY" in order for her NYSHRL claims to survive is flawed. King alleged that she worked out of two home offices, NY and Virginia, with Aramark's approval and assistance. A-13,

¶¶14-15; A-14, ¶18; A-25, ¶51. Aramark's suggestion that King must be hired as an exclusively NY-based employee to work out of her home in NY to warrant the application of NYSHRL is without support. The NYSHRL will apply when the discriminatory conduct has an impact in NY, which can be shown through allegations that such conduct affected the terms, conditions, or privileges of employment in NY. *See* Appellant Br. at 59-60.

Furthermore, Aramark's argument in Appellee's Brief at 25 that the cases cited by King are inapplicable is unpersuasive. *See Taperell v. Tegan Lighting, Inc.*, 18-CV-3343 (SJF)(ARL), 2019 WL 1118053, *3 & n. 4 (E.D.N.Y. 2019) (plaintiff East Coast Regional Sales Manager who traveled the East Coast 50-60% of the time for her California employer worked out of her NY home office when in NY); *Int'l Healthcare Exch., Inc. v. Global Healthcare Exch., LLC*, 470 F. Supp. 2d 345, 352-53 (S.D.N.Y. 2007) (plaintiff Director, International Business worked out of her NY home for Chicago employer when not traveling for work); *Curto v. Med. World Commc'ns, Inc.*, 388 F. Supp. 2d 101, 104 (E.D.N.Y. 2005) (plaintiff was initially hired to work in a NY office, but when a NJ company acquired her employer she was permitted to work out of both her NY home office and the NJ office). Aramark cites no cases holding that a NY resident employee who works out of a NY home office with the permission and assistance of their out of state

employer is not entitled to NYSHRL protection when the employer's discriminatory conduct impacts them in NY.

Moreover, Aramark unconvincingly attempts to minimize King's work in her NY home office by arguing that King alleges in her Complaint that "she sometimes worked from her house in New York and fielded work-related emails and calls from that location." *See* Appellee Br. at 25. In doing so, Aramark, contrary to law, fails to accept as true the material facts alleged in King's Complaint and does not construe all reasonable inferences in her favor. *See* Appellant Br. at 58-59. As discussed in Appellant's Brief at 60-63, the allegations of King's Complaint, and all reasonable inferences construed in her favor, show that with Aramark's knowledge King regularly performed Aramark's business at her NY office such as reading and responding to emails, conducting conference calls, reviewing data, making business decisions, and analyzing business reports. Further, while working from her NY office she was discriminated and retaliated against relative to her terms and conditions of employment. *See* Appellant Br. at 62-63. Additionally, Aramark's summary of purported allegations in King's Complaint that Aramark contends were later confirmed by King's deposition testimony must be disregarded. *See* Appellee Br. at 25. King's Complaint did not allege that all the adverse actions occurred in Virginia, and Aramark's summary is

not supported by A-153. Moreover, there is no legal authority to utilize King's deposition testimony in support of Aramark's Motion to Dismiss.

Also, King's reliance on *Bass v. World Wrestling Fed'n Entm't, Inc.*, 129 F. Supp. 2d 491 (E.D.N.Y. 2001) is not misplaced, as like Bass, King worked across multiple states, including her NY home office, and was impacted while working in NY on multiple occasions by Aramark's discriminatory and retaliatory conduct directed at her in NY. *See* Appellant Br. at 60-63.

As Point II of Appellant's Brief and the foregoing demonstrate, the Court erred in dismissing King's NYSHRL claims.

## CONCLUSION

The Court erred in dismissing King's NYSHRL claims and granting Aramark summary judgment dismissing King's remaining claims. Such Orders should be vacated, and this matter remanded to the Court for further proceedings and trial.

Dated: December 19, 2022

Respectfully submitted,

GRECO TRAPP, PLLC
Attorneys for Plaintiff-Appellant

By: /s/ Josephine A. Greco
Josephine A. Greco, Esq.

**Federal Rules of Appellate Procedure Form 6. Certificate of Compliance With Type-Volume Limit**

Certificate of Compliance With Type-Volume Limit,
Typeface Requirements, and Type-Style Requirements

1. This document complies with the type-volume limit of Fed. R. App. P. 32(a)(7)(B) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f):

   ☑ this document contains 3,666 words, **or**

   ☐ this brief uses a monospaced typeface and contains [*state the number of*] lines of text.

2. This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because:

   ☑ this document has been prepared in a proportionally spaced typeface using Microsoft Word for Microsoft 365 in 14 point Times New Roman font **or**

   ☐ this document has been prepared in a monospaced typeface using [*state name and version of word-processing program*] with [*state number of characters per inch and name of type style*].

(s) Josephine A. Greco, Esq.

Attorney for Appellant - Kristen King

Dated: December 19, 2022